Good morning, your honor. It might be afternoon now. May it please the court. If Pinher is First, means anything. It has to mean that a plaintiff cannot avoid a state's sovereign immunity with implausible constitutional claims and attenuated conclusory factual allegations that amount to nothing more than dressed up state claims. The petitioner's complaint should have been dismissed for three reasons. First, because petitioners have ample process that they have simply not availed, they have not chosen to pursue. Second, their substantive due process and equal protection claims are illusory. And third, because if there is some thin thread of federal jurisdiction, then Burford abstention should apply. As I read this complaint, it has nothing to, it doesn't advance, it doesn't call on the court to enforce state law. It's a straightforward 1983 suit alleging, as I read the complaint, if you can prove it, that the state of Louisiana has simply deliberately and intentionally foreclosed their opportunity to engage in abortion services. They would set a claim even if it were just pure economic activity. Now, let me finish. And when you, we're here on a motion to dismiss 12b-1, right? Yes, sir. Now, the question is, is whether on this complaint, this jurisdiction, you're, that's what we judge here. Now, what they allege is a, is a Federal law. They asked the United States district court, Ex parte Young, to order the officials here who are in official capacity to enforce Federal law. Now, that has, the Pennhurst doesn't touch that. If they say, if they, if the predicate is that, that it's Federal law that's being enforced, under your theory, Ex parte Young is gutted. Your Honor, Ex parte Young applies to an official, as I appreciate Ex parte Young, it applies to an official who is engaging in unconstitutional act. Now, that's the allegation. That's the allegation here as I read this complaint. And there's a timeline of what Louisiana has done in this case, could raise the fact question as to whether or not, and other legal questions as to whether or not that a violation of the State of Claimant, if they prove this in their line, they can conclude that it's a Federal violation, that you're violating Federal law. And the only law that's going to be enforced, I just want to frame this question for you a little bit, because I think you, you run too fast with Pennhurst. Of course, Pennhurst teaches us that we cannot, Federal courts, order State courts to abide their law. And you say, well, that's what you're doing here. And what that, that begs the question of the lawsuit. The question is a Federal question. And it says Federal courts order the, the defendant officers of, of the State of Louisiana to follow Federal law. And you, we're just being denied. Now, you, you can say that, that, that there's no such Federal claim here. But if, if there is a Federal claim, then, then that, that's where we are. The, I'm not going to ---- Generally, yes. I, I don't disagree with the, those general propositions, Your Honor. I think that there's two, there's, there's two important things that I want to ---- But look at the, well, let me stay with me. Okay. Look at the timeline that, that, that's here. I look at that for ten, over a period of ten years. You, this is stalled, stalled, stalled, stalled, stalled. And because you back off of this claim, raise that claim, raise that claim. I'm saying that, well, in fact, I'm not, I don't know the truth of these things. I'm just saying that that's the allegation. And, and, and, and what is uncontested is the sequence of this. If, if the prior, when this case is tried, it is concluded that the State of Louisiana has simply blocked this operative business from refusing to engage in the business, then now you have a federal violation. I mean, that's, and they can be ordered to, to buy the law. Counsel, do you have a response? Well, I, I think there are two things. Yes, Your Honor. So one thing is the letter that went out, and I think that it's very important that the letter, they started this licensing process in 2016. They received a letter in, in June of 2017, which advised that the secretary, not the secretary, but the, the section head of health standards had determined that she could not act on their application at that stage. So it's not 10 years. I mean, there's 10 years of events that went into building a building. There's not 10 years that went into application for the license. The license application started at a different point in time. This is about the license. I mean, let me ask a hypothetical. So forget about this case completely. Mm-hm. I apply for a license to open my business. Doesn't matter what the business is. And the regulatory agency puts my application in, in the drawer. Just completely ignores it in complete bad faith. That's a violation of state law, let's presume. Is that also a violation of the federal due process clause? Maybe. I mean, I, I think that it depends on, I, I mean, that sort of sounds to me like you've described a completely arbitrary and capricious. Correct. Failure to act entirely on something that, in a manner that you could probably show that other people, and, and potentially have allegations that other people have been treated differently, or treated better than you, because you at least got a decision. That's not what happened. So hold on, I'm, I'm talking about a fact pattern where there is no decision. And. I keep calling, the agency says, oh, we're working on it. It's all it is, it's in the drawer. It's complete bad faith. What I'm asking is, is that a federal cause of action? Under the due process clause, or equal protection? I think my initial answer to that is no, because you have options under state, the State Administrative Procedures Act, where you could get a decision. And so, to have a procedural due process claim, you really have to be completely walled off from getting any decision at all, and state administrative procedures law permits you to take that inaction, and try to get that, and get that decision made. You can either, if you believe that your case is not being handled properly, or being handled at all, then you can go directly to the district court, and you can ask a state district court to direct the agency to act, because it's being arbitrary and capricious. That's what the Louisiana Administrative Procedures Act provides. Here, if, if I could back you up a few steps, I want to walk you through all of the things they couldn't do. So, a state that, in my hypothetical, deliberately ignores state law? I think you would have to deliberately ignore state law under your hypothetical. You would have to be deliberately ignoring a process that's outlined in state law. Would that be a federal, a 14th Amendment violation? It arguably could be a procedural due process violation. To ignore state law? Well, to completely ignore state law, and be so arbitrary and capricious that you are denying someone procedural due process, arguably creates a procedural due process. If you have a, but you have to have a, some sort of substantive federal right, don't you? You still have to have a federal right, you still have to have a right, and, and I think that when you're dealing with an application for a license, as opposed to a, a, an entity that already has a license, there's a difference in your property rights or your actual rights that you're claiming. My, my question, the question is, is whether we have jurisdiction. And, and, and, and, and, and the allegations and the pleadings here, the, the, if, if they're, if this, if they stated a, they allege a federal claim violation here, that is, and it seems to me that it's very difficult for us to be before it. It just means that you've got to go back to the district court and, and go forward with this case. Maybe you go out on summary judgment, maybe on something else. But, but for whatever reason, you went under 12A1, so we have to take all these, all those allegations and, and, and assume that they're, they can make the, the case of it. Well, Your Honor, I think really what we're talking about, and I, and I'm, I'm glad we're talking about it, is what are the pleading requirements under 12B1? And, and I believe that they start with the plausibility requirement that would, you would apply to a 12B6, but they go further than that under 12B1, because 12B1 is jurisdictional. And the court can look and should look. 12B6 is a vehicle by which jurisdiction can be challenged factually at the outset. You bypass that, and you're under the center of whether or not you have to accept the allegations that are there. And I, unless we turn, turn all the rules upside down, you can't come in and say, look, you, you want to challenge these underlying allegations. I'm not trying to comment on the validity of that. I'm just dealing with the limits of our court in terms of jurisdiction. Your Honor, I, and I, yes, Your Honor, I understand. I think that ultimately what this is, is a petition that challenges the secretary, the, the health standards section's head's decision that she can't act right now based on her interpretation and application of state law. That's what these claims all come back toward, even though they have been dressed up as federal claims, which takes us directly to plausibility requirements. And, and you've acknowledged, you've acknowledged that, and I, and I think you were correct to acknowledge that if the federal due process clause means anything, I'm sorry, the 14th Amendment due process clause means anything, it's that states have to follow their laws and get arbitrarily, capriciously, just completely ignore them in a given situation. That's the fundamental, you're entitled to the law that's been provided to you. So if you've conceded that, isn't that what they've essentially alleged? You may win on the merits. I don't know about that. I think, Your Honor, what, what we've tried. Hold on. Hold on. Haven't they alleged that you're not following your own law? I think that's your argument. No, I think what they've alleged is that the law that we are following is not being properly applied to them. I think that is the ultimate allegation that they're making. Because if I could walk you through under, under Louisiana law, what they, the black letter law entitles them to, then you would see that they really haven't plausibly pled any claims. Please do. So, answer his question. The first thing that they could have done, Judge Elrod, is, follow me, is ask for a meeting with the Secretary. The letter they received came from health standards. It came from Cecile Castillo, who is the section head in health standards. So the very first thing they could have done is just ask for a meeting. They didn't do it. They could have done that a year and a half ago. Second thing they could have done, ask for a provisional license under 40, Louisiana revised statute 402175.6. Did not do that. They could have asked the agency for an official interpretation of state law to declare whether Castillo, whether Cecile Castillo was properly applying state law with regard to the investigations. Did not do that. They could have raised any one of these state claims, state interpretations of law at the agency level, and then they could have brought that forward through the Secretary and through, on through a district court for a final binding interpretation of state law. They could have appealed, and I think this is key, key, key. Well, let's keep one other thing in mind in terms of exhaustion of administrative remedies, quote, quote, in a claim of constitutional violation. There is no such requirement, it's straightforward, in 1983. What I'm trying to get in focus for us is that your briefing and so forth goes, a large assumptions about the enforcement of state law, and that's not what is in this complaint, which I've got in front of me, and I've read pretty carefully, detailing what they allege, and events, et cetera, et cetera, et cetera, and it's on a motion to dismiss. And the district court done nothing but deny the motion to dismiss, so you go forward. Judge Shakenbotham, all that, all the state has done at this stage is send them a letter advising them that there are two criminal investigations that prevent the state from acting under state law. That, at best, that is a preliminary procedural or intermediate agency action, and they can take that, they can either challenge it at the agency level, or they can go straight to district court and challenge that decision. So, from a procedural due process, and just pure plausibility, which they do have to at least meet plausibility requirements, and for purposes of standing, this court can take into account more than just what they state in their pleadings, and we did provide additional statements that were attached to our motion to dismiss. Well, I'm suggesting to you, if this had been a commercial business not engaged in a commercial business, you'd still, by these allegations, be a federal, say, a federal claim, and you'd come to federal court in 1983, if this had been pure economic activity. If you block, if you block and prevent this exercise, then that's what, and that's what the allegation is. Now, you're saying, you're challenging the allegation because they, that you didn't block it. I'm not challenging the, challenging the allegation. I'm pointing you to state law, which I think shows that it is not a plausible claim, because state law gives them an avenue to test, to go and get a decision. If they want a decision, they could get it. I think the decision they would get at this point, because of the application of state law and the interpretation of state law, is that their application would probably be denied, because the agency that has to make the decision is interpreting state law as preventing her from acting, and ultimately, what they are trying to do is circumvent the entire licensing process, because there is, there are a whole number of steps that they could take, and I don't think that's exhaustion. I don't, I don't want to confuse that with exhaustion of administrative remedies. There's, where we are at this stage is an intermediate decision, and they have an avenue to test it, or challenge it, or get a decision, so there's no procedural due process violation. How long would that process take to get that final decision that they could then? Well, presumably, if they had a meeting with the secretary, that would take a matter of weeks. If they wanted a decision from an administrative law judge, it might take a few months. If they wanted to go to district court, then they would have, probably that would take anywhere from maybe up to six months. It depends if they filed a preliminary injunction, which I think they have to do under that particular provision. How long have they been trying to get a license? Excuse me, I'm sorry. How long have they been trying to get a license? They applied for the license approximately, at the time this suit was initiated, I think the license was pending for 18 months, and I would point out that ever since this suit has been filed, nothing has prevented them from taking any of the steps that they could still take, because the state does not treat the application as closed. The application was not completed during the, it was much later, wasn't it in 2017 that the application was completed? In approximately May of 2017, the application was complete, and they received the letter from health standards in June. And then, at that point in time, they could have asked for a meeting, they could have asked for a provisional license, they could have gone straight to district court, they could have asked for a declaratory judgment on the interpretation of the law from the secretary and then from the courts, and these are all options that they had on the intermediate preliminary decision where they are now. So, I wouldn't deny that it is a decision that has the consequence of not obtaining the license, but I would characterize it as an intermediate preliminary or procedural decision which under 49-964 they can take straight to district court if they think that they're being unfairly prevented from obtaining a decision. Your red light is on and you've saved time for rebuttal. Thank you. Good afternoon, and may it please the court, I'm Rachel Shalev on behalf of the Plaintiffs' Appellees. The secretary has spent most of her time defending her actions under state law and attacking the validity of our federal claims, but none of those merits issues have been litigated and none has any bearing on this appeal. Instead, the question is whether there's appellate jurisdiction in the first place, and there isn't for at least two reasons. First, there isn't an immediately appealable collateral order to begin with, and second, even if there is, the immunity argument that underlies it is insubstantial and the appeal must therefore be dismissed. Now, the secretary argues that she's immune from relief on her licensing claims because federal courts cannot enjoin state officials from violating federal law simply if they claim that they're following state law. But over a century of precedent dating back to ex parte Young says that's wrong, a point that this court recently confirmed in the June Medical Services case. What's more, accepting the immunity argument would warp constitutional litigation across the board. Would you concede that a frivolous, on its face, frivolous federal indication of a federal claim would violate Pennhurst? Are you saying that all you have to do is magic words, recite federal law, and you survive Pennhurst? There are ways to deal with frivolous federal claims. A defendant can move to dismiss for lack of federal question jurisdiction under 28 U.S.C. 1331. That's not what she's done here. But to directly answer your question, a federal claim doesn't become a state law claim that's immune under the 11th Amendment when it fails. It just fails. And we know that because in numerous cases, this court has held that the 11th Amendment is no bar at the same time that it dismisses federal claims. We also know from the Supreme Court that in deciding whether a claim is barred by immunity, the merits, the ultimate validity of the claim are off the table. That's the Verizon Maryland case where the Supreme Court held, and this is a quote, the inquiry into whether suit lies under ex parte young does not include an analysis of the merits of the claim. I get that we don't sit here and look at the fact dispute and figure out what the facts are. That's the whole point of the merits proceeding. I guess I'm just confirming, though, that you're not saying a magic words recitation of federal law and you immediately get the federal court. You do acknowledge that has to be a on its face plausible theory. That's not an immunity problem. It's a it's a federal question. Second, but it's absolutely right that the federal court, the district court can make sure that surely state sovereignty is an extremely important doctrine. You don't know Pennhurst exists. It should. I assume you agree you can't so easily evade Pennhurst simply by adding two words, federal law and be done with it. I just want to nail down and you get a look at this. We do get to look at if it's utterly facially impossible. There's no federal question. So I want to turn to the last thing we heard from the state, which is that there were several steps that you could have taken under state law and go ahead and get your denial. If that's a denial and then proceed to state court remedies, assuming that the state's right, you may want to contest that. But let me ask my question first. If there were those remedies, do you have any case law that says you still have a federal due process claim, even though you have these state remedies available to you? Let me tackle it. It's a lot of a lot of my question. I apologize. First, it is not clear that the administrative remedies are available to us right now. The regulations require that there be a decision on what we have here. You just got, I think, a concession today that they are available. So that may be useful to you. Yes. So anyway, there's still a question about whether we can actually pursue those remedies. Second, I'll remind you, we don't just have a procedural due process claim. We also have an equal protection claim and an undue burden claim. So even if state law means what she says it means. I don't understand your undue burden claim, though, respectfully, because you're not challenging the statute. Right. We're challenging her enforcement of it, her refusal to move forward. That sounds more like procedural due process to me. No, if that decision has is animated either by the purpose to impede access to abortion or it has the effect of impeding access to abortion, it's an undue burden claim. And how it works in this case. The whole premise of the statute is that it's going to deny, at least in theory, some licenses. And you're not challenging that. We're right. I think we assume that the statute is fully valid for purposes of the way you pled this case. Right. Because, in fact, nothing in the statute requires her to forbear or authorizes this reason as a reason not to act. But, you know. So how does that work? How is that an undue burden? Because there will be times you will be denied if because it's a fraudulent economic business or I'm not saying your business, I'm hypothetically, or that it's, you know, it's an unsafe business or so that doesn't automatically raise undue burden unless there's some sort of disingenuousness in that analysis, perhaps. That's exactly right. And one of our, you know, our primary theory of the case is that this is pretext, that the reason that she's acting is not because these investigations are outstanding or because she thinks that state law authorizes or requires her to do it, but because she has an improper purpose, which is one prong of the undue burden test, an independent violation. But you're right that in general, you know, you're going to have to ask in each case, is the state's reason for refusing to act on the application for constructively denying it, does it outweigh the burdens on access on the other side? And that's, you know, a whole woman's health case-y balancing test. And that's the merits question and that's what, you know, we will litigate once we get back to the district court. Well, and also it hasn't been yet determined that the licensing itself is, I mean, you're assuming that the license itself constitutes the undue burden, the regular economic license, and we don't yet have precedent on that either. But we'll spot you that for today's argument. Well, there actually is a case. There's a Deerfield Medical Services case where an official denied a license and there was an undue burden claim. There was an undue burden case. Anyway, there's some law in there. But anyway, the reason that we're here today is not will we ultimately succeed on the merits of our claims and have we even stated a complaint? Remember, they haven't brought a 12b-6. They can bring the 12b-6 and they can say it's not ripe, it's, you don't have standing. You can bring all those arguments there. Is that what you're saying? The only motion that they were permitted to bring was a 12b-1 motion and they made the immunity argument. What do you mean permitted to bring? So the district court was sequencing things. It said, come to me first with your 12b-1 motion. And that's how we got here. If this court dismisses this appeal for want of appellate jurisdiction or simply affirms on the immunity ground, the case will go back to the district court and she can file her 12b-6 motion and she can make all of the arguments that she's made in her reply brief. All of those arguments are challenges to the sufficiency of our claims. That's all yet to come. The district court will adjudicate them. She can explain why we're on the... There will be a forum in a format to challenge ripeness and standing and all of those types of documents, correct? The district court has provided a sequential subsequent forum for that. Yes, so the district court did make a first pass at their original ripeness argument. That's what I'm wondering. Has the district court considered that the district has already ruled on that? And so really that's before us too. And so we get to decide that because now we're here. Or it's an awkward thing because the district court made a pass at it, as you say. Well, the district court... Remember, by pass, I mean, we're just at the pleading stage. So what the district court said is, I've heard your arguments, I'm rejecting them, but without prejudice to renewing them. So that's what I mean when I say... Well, why then are they not ripe for us to rule on? Because it's in the 12b one and so they get to go raise the same arguments in 12b-6. And if he says, I already ruled on them, then they're ripe to be ruled on? No. It's a little complicated, so I'll lay it out. Okay. Let me, let me. I'm not sure you're following the questions. 12b-1, the question is whether or not the you're accepting the allegations of your complaint in which you allege that this whole thing are sham transactions, that these denials are sham, and you've set out timelines, et cetera. And accepting those as true, then the question is whether or not the Court at 12b-1 has jurisdiction to go forward. And that's all that I read that's been decided here. Now, I don't know what you're talking about, about the Court also hinted about some other thing. The fact of the matter is that the jurisdiction of the Court ultimately is still has been, to my eye, has been invoked. But now whether it's, it can go forward, what happens when you go forward, I don't know. I don't know the truth of any of these allegations. But they're detailed, and they're set out at length in 29 pages of, quote, non, allegations, not plausible claims, it's very difficult to accept. So, my, the difficulty I have with that is that, that it's looking at what you did allege. And are you going to, are you going to defend that or are you going to abandon it? Oh, we're, we're absolutely defending it. Well, I'm not so sure. So, Judge Alvarado, I think part of what you're asking is what's the question for this Court right now? Right. And if, if you're saying that they can't raise their ripeness and standing and all those types of things which could relate to the, the bases of their claims, here, is that in a later proceeding or not? And when, when do they raise that? So, remember, we're here on an interlocutory appeal from the denial of immunity argument. Right. So, first you have to ask, is there appellate jurisdiction in the first place? And we have two independent arguments for why there isn't. And I, I'm happy to go through those, but just to, to skip ahead in the sequence, it's only if there's appellate jurisdiction right now that you can decide the immunity question. Right. Can we also decide these other issues? Can we also decide these other issues? Only if it's appropriate to exercise the doctrine of pendent appellate jurisdiction. Right. And so, can we go ahead and rule on ripeness and standing now? If we do have, if we answer the first question that because there is a sovereign question, we've got pendent appellate jurisdiction. So, you first have to say that, that there's an appealable clause. Right. But you also have to say that the immunity argument is substantial. Because in cases like Houston Community Hospital, which Judge Higginbotham, you authored, and Martin against Halliburton, there was a collateral order before the court, but the court nonetheless dismissed the appeal for want of appellate jurisdiction because the immunity argument that underlay it was insubstantial. And the court said that to be substantial, the immunity argument has to be more than merely colorable. Now, the immunity argument here, we don't think is nearly colorable, but it certainly isn't substantial. Okay. Assuming, arguendo, that we disagree with you and think it's substantial, then it's appropriate for us to address standing and ripeness. Yes or no? What the court said in the Hospitality House case is that if there's appellate jurisdiction, the court may address whether the district court had subject matter jurisdiction. Or we could wait for the next motion to do it? Is that, that would be our prerogative? Is that what the answer to the question is? Yes, you may. Wait. You may exercise it now. You don't have to. And it makes sense not to rule in an interlocutory posture on standing. Because remember, denials of a standing challenge are not reviewable under the collateral order doctrine. In every ordinary case, the defendant has to wait for a final judgment before the defendant can come to the Court of Appeals and say the district court erred in the standing analysis. So that's typical. What instead is happening is a hook and ladder approach where the secretary is trying to get immediate appellate review on the basis of an insubstantial review argument and then come in with all these other pendent issues that otherwise would not be appealable on a collateral basis. And that's precisely what the Supreme Court was worried about in Swint, where it said that loosely applying pendent appellate jurisdiction would encourage parties to parlay collateral orders into multi-issue interlocutory appeals. And the court was so worried about that that it carefully circumscribed pendent appellate jurisdiction. So much so that some judges, including Judge Jones, don't think that pendent appellate jurisdiction even exists anymore. OK. Can I ask you then, does it matter whether or not you could get the relief that's sought in the complaint? There's an argument that there are three types of relief that you argue for. And regardless of whether or not the merits show you're entitled to the relief, do the types of relief have to be possible in order for you to win on 12B1? That it has to be a plausible case that has relief that could actually be gotten in the district court? For us to have standing, we have to satisfy three requirements, one of which is redressability. But we have standing so long as there is a remedy for any of our injuries, even if there isn't a remedy for all of our injuries. But there is a remedy for all of our injuries here. Can you walk me through those remedies, please? So in part, which remedy is appropriate will depend on which violation is found. So that's a little bit why this question is putting it in part. But can you even get those remedies? Can you get a remedy that we say, Louisiana, you must rule now? Yes. If the reason — if the secretary is violating the U.S. Constitution by declining to act on the application, nothing stops this court from awarding appropriate relief, including directing her to issue the license. Can we say, Louisiana, you must issue a license now? That's different than rule now. So this court has done that before. It has directed an official to — If the state cannot proffer any articulable reason, even in matters of economic regulation, then we certainly can grant relief. Absolutely. If the only reason that she's — It doesn't matter. You take abortion off the table. So we could say, issue the license today, if it was a violation of federal law and that was shown, by not acting. If the only reason she's not acting on an application is for an unconstitutional reason, it is entirely appropriate that you have the authority, this court, to award relief. That's your substantive due process argument. The procedural due process argument wouldn't get you there. It might depend on what — whether there actually is a property interest in the state law, but that relief would also be appropriate on the equal protection claim. Would you agree that if you have a fact pattern — forget this case — where the parties simply have a good-faith disagreement about the meaning of state law, that there's no federal claim there? Would not agree with that. As cases — That would be — you could have a due process violation, in theory, if it's an arbitrary, capricious, you know, just deliberate, as I said, putting the application to the drawer. But if it's a good-faith disagreement of state law, why is that merely a state law question? So I'll give you an example. In Young v. Hoseman, it was an equal protection claim, and that case had all of the features of this case, including the one that you just mentioned. Well, you allege it's a sham. Your allegations are that these are sham rulings that you are preventing from going forward. That's your allegation. So if you're asking, well, if it wasn't a sham, if it was a bona fide investigation, if there was a timeline for when the Secretary would act, if — I'm trying to cap it in the scope of your alleged federal right, because if you're disagreeing on the meeting of state law, it's a federal claim. Admittedly, that sounds pretty extreme. No, the claim here is, if the Secretary is singling out this applicant for an irrational, impermissible reason — Okay. That's different from my fact pattern. So it wouldn't be a good-faith situation. You're talking about bad faith, a sham, as Judge Agubato alludes to. Yeah. But you agree that you have to prove sham, or you have to plead sham. We pleaded sham. I understand. But I'm just, again, I'm testing the limits of your federal theory, because you're not this specific posture. I do just want to make clear that even if there is a dispute about what state law means, and that underlies the federal claim, that does not mean that the suit is immune under the 11th Amendment. That was exactly the case in Young against Hosman. So that's all I want to say about that. But you're right that that's not our case. We have alleged sham. We have alleged improper purpose. And that's the case, as you find it. So they've said that you're incorrect about state law, that you have the right to get final action by, I think, three or four different remedies. Would you agree that as long as you have, under their interpretation, you have these rights, you can take advantage of them right now, what's the federal cause of action when the state system is available to you? It's still an equal protection problem. It's still an undue burden. And as Judge Higginbotham mentioned, under Section 1983, we do not have to exhaust state remedies before bringing a claim in federal court. But the underlying premise is, of your lawsuit is, and I'm not sure what you're describing now, is that the State of Louisiana has, and you articulate all these various reasons and so on and so forth, the alleged sham transactions. And that if that's provable, then the remedy is quite simple. You simply are enjoined, the officials are enjoined from bar — from bidding you to — to engage in your practice. But now, that's a — that's a lot to prove, but that's all I'm saying, but that's the question. You've got a lot of allegations here, and you've got some detailed facts that are alleged there, et cetera, et cetera, and then, you know, can you challenge those? That's in my sense about the case. You've come to New Orleans too soon. You're exactly right that, you know, we'll be put to our proof, and that's all ahead of us. The only reason that we're here on appeal in the first place right now is because she made — You know, Counsel, I do have a question, because we've had takings claims, for example, that they had exhaust their state rights first and proved that they had pursued it all the way through in the state. Why is that? Why do those kind of things not apply in this context? This is just like the Romano against Greenstein case, where it was a 1983 challenge to the Secretary of the Louisiana Department about a particular decision about an entitlement, and the court said, you don't have to exhaust. That's the norm in 1983 actions, equal protection claims, the kinds of claims that we have here. The only thing that's unusual about this case is that we're here on appeal in the first place, and the easiest way to dispose of it is to simply recognize that there isn't appellate jurisdiction in the first place and to leave everything for what's to come. Okay. I have a couple more questions. Assuming that we did have appellate jurisdiction and it were appropriate to have pendent jurisdiction, how could the funding claims possibly be ripe? Right. I'll just quickly repeat those caveats. You have to have a collateral order. I got them. I got the—assuming you've already gone over those in great detail, how in the world are the funding claims ripe when there's not yet even a license to provide the services? There's so many steps before you're denied funding. How in the world is that ripe? So her challenge to the justiciability of the defunding claims turns entirely on the licensing claims failing, which means here that they're either immune or that we lack standing to bring them. If that's not true and it isn't true, then there is a real, actual threat of enforcement, and this court said in the Loa Edela case that it's a mere threat of—a mere threatened injury is sufficient and the threat is real. The threat is real here because she's already tried to defund this same entity until this court stopped it. So we know from the history that it's not a speculative concern that the moment she's able, she will defund the entity, but— Okay, and then I have two more questions. What's the status of the Louisiana statute situation? So it's—I'll give you my read of it, and the Secretary might have a different read of it. So there's the original statute that we challenged in our complaint, HB 606. Since we filed the suit, it was amended to narrow it so that it applies basically only to the Planned Parenthood entity. But is it in effect— Right, so—no. Because it's not in effect as to particular plaintiffs because of Judge Jackson's case, I think. Isn't that right? Settled out or something? Okay, it was stayed with respect to those parties. There's been no stay here. Now, until that revised version of the statute becomes effective, the preceding version is still in effect. The preceding version is in effect as to everybody except those people that are bound in Judge Jackson's proceeding, correct? There was only a stipulation as to those parties, so the statute still applies. And then my last question is, it says in the briefs that in addition to the Texas Penal Code violations, which are alleged, that there are now Louisiana process going on, but it's all cryptically referred to as being under seal. Did the district court look at this in camera or determine that it was premature to do so? It's not—it's mentioned as a drive-by, but not ever—it's not just that there's other investigations going on with the Texas AG's office and that sort of thing referred to by the Congress for procuring tissue and transferring to researchers, allegedly. It's direct Louisiana claims. What's the situation on that? We don't know much about it. Here's what we do know. It's an investigation into Gulf Coast, which is the Medicaid provider. Gulf Coast does not perform abortions in Louisiana or, in fact, anywhere. So what we know, at least, is that investigation cannot be about the health or safety of abortion. To your specific question, the judge has not yet looked at these allegations in camera. When the case is returned to the district court, the district court can do that. If those are relevant to the merits of the claim or the plausibility of our claims, the district court can consider them then. But all of that is for remand. Okay, thank you. So we have a lot to cover in five minutes. I'm going to try and kind of quickly walk through a few things. First, on the pleading standard. I think, Judge Schell, you're focusing on exactly the argument that I'm trying to make, and that is that you can't just use magical words and create federal jurisdiction, especially where there's a sovereign immunity claim. And that there is Fifth Circuit precedent. It is admittedly weak. But, I mean, there's one case, I think, that specifically said that that is a published case. And there are two cases that are unpublished cases that essentially attach the same plausibility requirement, but also emphasize that 12b1 motions, you can look at more than just the allegations in the complaint. And we have provided some statements that go beyond that. The one with regard to the state investigation that you asked about, that is uncontradicted. We did offer to Judge de Gravel to look at the complaint. We obtained a state order. He declined to look at it. So at this point, all that's in the record is the fact that there is one, and that's uncontradicted. The second, the other one was an act of content, was a congressional referral that did go beyond the videos. And I think that stands that we also attached that to the pleadings, the entire referral. It is not just the videos. It goes well beyond that with regard to what was referred to Texas and what's investigating, being investigated in Texas. The, so I think that it would help to clarify the pleading standards and that 12b motion does both encompass Twombly-Iqbal pleading requirements, but also goes beyond that with regard to encompassing ordinary 12b1 pleading standards. And when it relates to standing and sovereign immunity, and sovereign immunity is essentially a subject matter jurisdiction claim, but it's a very particular type of one that relates to states and the 11th Amendment. I think that standing is also subject matter jurisdiction. I'm sorry. If you state a claim, a Federal claim here, they then proceed here. And with Ex parte Young, there is no immunity to that. When you argue, when you're arguing the immunity, you're just, you're just, you're really, it begs the underlying question. Without Ex parte Young, of course, or if you saw Bonnie damage it, of course there would be immunity. But on the other hand, if you accept their claim, then there really isn't a problem of qualified immunity of any kind. That's what Ex parte Young is. And I think a 12b1 exception requires you to look beyond just the plain allegations in the pleading to determine whether there is in fact jurisdiction. And when it involves sovereign immunity, it does impact the state to a much larger, we're not just talking about standing and rightness that can be determined later. We're talking about subject matter jurisdiction over a state to direct the state to issue a state license that, where they haven't even adequately alleged that they have completed the ordinance of the claim. All that rises or falls on the question of whether they've stated a Federal claim. And if they have stated a Federal claim, then there isn't an immunity problem. And Ex parte Young would allow the remedies that it does, injunctive only. But I'm suggesting that all I'm saying to you is that there isn't an independent sovereign argument here. Your sovereignty interests are protected, properly so, by the question of whether or not this is traveling as an Ex parte Young case or not. And I think that goes entirely to the question of whether they've actually pleaded plausible claims and what constitutes a plausible claim under 12b1. Is your point, then, that it's not a plausible due process claim, essentially not, sort of, it's not rightness technically of what I'm thinking about, but until they've actually undertaken the state steps that you've talked about, they can't claim that they've been denied process. They've not tried all the process available. They cannot claim that they have been denied process when they have ample process that they've just not pursued, starting with the fact that they could have even asked for a secretary. I mean, some of these steps are fairly simple, and some of them may be more complicated, but they're not ambiguous, and they're not unclear. They're right there in the law. They're in the Louisiana Administrative Procedures Act, and they're in the licensing law. So, and they're in the regs, so they aren't ambiguous. They're not hidden. I mean, they could, all they have to do is read them and ask for them, and they've done none of those things. They ran straight to federal court, based solely on a single letter that advised that there were investigations underway, and during that time, I'm out of time, Your Honor. You can answer the question. During that period of time, another investigation began, and that's undisputed, and the judge just didn't look any further into it at all. So unless you have further questions, I'm, I'm. I do have a question about, and I meant to ask the other side about this too, about Burford abstention. Is that for us to look at now? Well, I mean, I think that under, I think that pendant jurisdiction allows you to look at that, and that. Or is that something that could be later? Is what ultimately justifies Burford, that if there is some thin thread, where I began is if there is some thin thread of federal jurisdiction that you can find, it's still, there is a Burford, there is a substantial justification for Burford abstention until, at least until something else, and they've had, they have obtained an actual final decision. They can get a final decision. They haven't asked for one. They could get review of an intermediate decision. They haven't asked for one, and, and, but, and what they want is for a federal judge to direct us to issue the license contrary to the Secretary's interpretation of state law, and that's Pennhurst, unless, I mean, unless they can somehow create these plausible federal claims, which our position is they're not plausible. Okay, I think we have your argument. Thank you, counsel. The court will stand in recess until tomorrow morning.